**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **COREY CARDREY THOMAS,** | § | |
| **TDCJ No. 02170460,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **V.** | § | **W-20-CV-922-ADA** |
| | § | |
| **BOBBY LUMPKIN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## ORDER

Before the Court are Petitioner Corey Cardrey Thomas's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent's Response (ECF No. 12), and Petitioner's Reply (ECF No. 15). Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner's federal habeas corpus petition should be denied under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

## I.  Background

In November 2016, Petitioner was charged by indictment with one count of assault of a public servant. The indictment included two enhancement paragraphs describing (1) Petitioner's 2008 conviction for possession of a controlled substance and (2) Petitioner's 2000 conviction for burglary of a habitation. (ECF No. 13-2 at 5-7.) On November 28, 2017, a jury convicted Petitioner of assault on a public servant, found both enhancement

1

paragraphs to be true, and sentenced Petitioner to fifty-three years imprisonment. *State v. Thomas*, No. 76497 (264th Dist. Ct., Bell Cnty., Tex. Nov. 28, 2017). (ECF No. 13-2 at 102-03.) The following is a summary of the factual allegations against Petitioner.

The Bell County 911 Center records custodian testified with respect to a 911 call received from Complainant on September 18, 2016. In the 911 call, Complainant states that Appellant was threatening her and told her he would have her killed. Complainant told the 911 operator that Appellant was looking for her at her mother's house and had threatened to shoot her. Complainant gave her address to the 911 operator.

Officer Stickles was driving his patrol vehicle accompanied by Officer Ramon. Officer Stickles received the 911 dispatch and responded to the address provided by Complainant. Describing his meeting with Complainant, Officer Stickles testified that Complainant "was scared, that [Appellant] was texting her and looking for her, coming by the residence looking for her, and she was scared for her life." Officer Stickles stated that Complainant told him "[Appellant] was going to kill [Complainant] and [Complainant's] family."

Officer Stickles testified that Complainant showed him text messages she received from Appellant in which Complainant and Appellant "were arguing back and forth." Officer Stickles recalled that one of the messages told Complainant that "the kids would be better off without her." Complainant also told Officer Stickles that Appellant carries a gun and drives a white Suburban with white windshield wiper blades. Complainant told Officer Stickles where to find Appellant.

Responding to Appellant's location as provided by Complainant, Officer Stickles "located a white [S]uburban with white windshield wiper blades just as [Complainant] explained." Officer Stickles saw Appellant standing next to the Suburban's driver's side door. Officer Stickles parked his patrol vehicle in front of the white Suburban and asked Appellant for his name. Officer Stickles testified that Appellant "continued to get upset and wouldn't answer the question." Officer Stickles stated that Appellant "continued to refuse" to answer questions; "back[ed] away" from Officer Stickles; and "attempted to flee on foot."

According to Officer Stickles, he "grab[bed] the back of [Appellant's] shirt" to "keep him from fleeing." Officer Stickles stated that he fell to his knees and Appellant put him in a headlock. Officer Stickles testified that Appellant

"forced his weight on top of me and had me on the ground where I was on my back where he began striking me." Officer Stickles recalled that Appellant was tugging at his belt near his service weapon. Officer Ramon pulled Appellant off Officer Stickles and Appellant was arrested for assaulting a police officer.

Officer Stickles's patrol car dash camera recorded his interactions with Appellant. The dash camera video shows Officer Stickles and Officer Ramon approaching Appellant in front of a white Suburban; Officer Stickles asks Appellant for his name and tells Appellant they are investigating a harassment call. Appellant asks Officer Stickles if he is detained; Officer Stickles replies "you're about to be, yes."

Appellant and Officer Stickles begin to argue, with Appellant telling Officer Stickles "wherever you got the call from is where you're supposed to be." Appellant does not provide his name to Officer Stickles. Appellant walks out of the camera's frame and is followed by Officer Stickles and Officer Ramon. The dash camera video records sounds of the ensuing scuffle; none of the individuals again appear in the camera's frame before the video ends.

*Thomas v. State*, No. 14-18-00067-CR, 2019 WL 1526434, at *1-2 (Tex. Ct. App.—Houston [14th Dist.] Apr. 9, 2019, pet. ref'd). Petitioner's conviction was affirmed on appeal. *Id.* On August 21, 2019, the Texas Court of Criminal Appeals (TCCA) refused Petitioner's Petition for Discretionary Review (PDR). *Thomas v. State*, No. PD-0376-19 (Tex. Crim. App. Aug. 21, 2019). Petitioner did not file a petition for a writ of certiorari to the United States Supreme Court. (ECF No. 1 at 3.)

On July 29, 2019, Petitioner filed his first pro se state habeas corpus application, which the TCCA dismissed as noncompliant on October 23, 2019. *Ex parte Thomas*, WR-90,399-01 (Tex. Crim. App. Oct. 23, 2019). (ECF No. 13-18.) Petitioner filed his second

state habeas corpus application on November 15, 2019,[1] and listed the following four

grounds of relief:

1. Petitioner's constitutional rights were violated when police officers failed to admonish Petitioner of his *Miranda* rights after they placed him in restraints and into a patrol car.

2. Petitioner's trial attorney provided ineffective assistance of counsel by failing to call a key eyewitness who would have provided an eyewitness account of the incident and a cellphone video of the incident. Trial counsel also failed to secure all the text messages between Petitioner and the complainant, adequately investigate the case, and interview witnesses. Appellate counsel also provided ineffective assistance when she failed to raise trial counsel's ineffective assistance on appeal.

3. The State intentionally withheld exculpatory evidence, i.e. the entire text messages in sequence, and deleted the complainant's comments.

4. Petitioner is actually innocent of the offense because he never threatened the complainant, never assaulted a police officer and was illegally seized and arrested.

(ECF No. 13-25 at 95-110.)

After Petitioner's trial counsel and appellate counsel filed their responses to

Petitioner's state habeas application, (ECF No. 13-25 at 167-78), the State filed its

Proposed Findings of Fact and Conclusions of Law, which the state habeas court adopted

on February 17, 2020, with the recommendation that Petitioner's application be denied

(*id.* at 184-99). On April 22, 2020, the TCCA denied Petitioner's application without written

order on the findings of the trial court without hearing and on the court's independent

review of the record. *Ex parte Thomas*, No. WR-90,399-02 (Tex. Crim. App. Apr. 22,

2020). (ECF No. 13-20.)

---

[1] Petitioner's second state application is dated July 29, 2019, as was his first state habeas application. Since Petitioner's first application was not dismissed until October 23, 2019, the Court assumes second application's date is an error and refers instead to the filing date, as the statute of limitations is not at issue.

On September 22, 2020, Petitioner filed his federal habeas petition, listing the following grounds of relief:

1. The State deliberately withheld evidence from the defense and jury in violation of *Brady v. Maryland*,
2. Petitioner's Fifth Amendment rights were violated with the arresting officers failed to admonish him of his *Miranda* rights after placing him in a police car;

3. His trial counsel provided ineffective assistance when counsel failed to call a key witness to testify and did not interview any other witnesses;

4. The State did not provide a fair hearing regarding the motion to suppress;

5. Trial counsel provided ineffective assistance by failing to investigate the exculpatory text messages between Petitioner and the complainant;

6. Appellate counsel provided ineffective assistance by failing to raise trial counsel's deficient performance on appeal; and

7. Petitioner is actually innocent based on the violation of his Fifth Amendment rights.

(ECF No. 1.) On January 8, 2021, Respondent filed their response (ECF No. 12) to which Petitioner replied on January 29, 2021 (ECF No. 15).

## **II. Standard of Review**

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S.

133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness always should be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citation omitted). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011). "'If this standard is difficult to meet—and it is—that is because it was meant to be.'" *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

6

## **III. Analysis**

A. The *Brady* claim (claim 1)

Petitioner argues that the State withheld the complete text message chain between himself and the complainant, which would have shown the jury there was no threat to the complainant, and that the police therefore lacked reasonable suspicion for Petitioner's subsequent detention and arrest. Petitioner argues the State also deleted messages where the complainant writes "Stop talking and pull up" and "Come on or I'll come to you" and that the message chain ended a day before the complainant called 911. Petitioner further argues the State deleted messages that would have put Petitioner's message to the complainant that "kids will be better off anyway" in a non-threatening context.

In his affidavit before the State habeas court, Petitioner's trial counsel, Mr. White, stated that "[d]uring the discovery process, the State did make available to me photographs of text messages between Mr. Thomas and [the complainant]. I reviewed this information and shared it with my client. I do not recall any of the text messages that I reviewed being exculpatory as to Mr. Thomas." (ECF No. 13-25 at 174-75.) The state habeas court made the following findings:

> 79. The record reflects, that the State called [the complainant] to the witness stand, and during cross-examination by Mr. White, she testified that the text messages he was asking her to comment on did not represent all the text messages on her old cell phone that had been sent to her by the Applicant.
>
> 80. On re-direct examination, the State showed [the complainant] pictures that the police made of the text messages on her old cell that had been

7

compiled into State's Exhibit Number 28, and asked her to page through all of them and point out the threatening ones, and at one point asks her:

> "Q [State] And did you let the police photograph all those text messages both from you and him?
>
> "A [[The Complainant]] Yes. Yes, sir.
>
> "Q Okay. Judge - and that's a true and accurate representation of the text messages going back and forth between yourself and this defendant?
> "A Sir?
>
> "Q Is that a true and accurate representation of the text messages that you were sending back and forth to the person you know as C-Lo, this defendant?
>
> "A Yes, sir. . . .

81. For his part, the Court finds that according to Mr. White's affidavit, during the discovery process, the State made available to Mr. White the photographs of text messages that became State's Exhibit Number 28, and he reviewed them and shared them with the Applicant.

82. The Court finds that the record does not support the Applicant's claims that text messages were withheld by the State from the defense or the jury.

(*Id.* at 194-95) (record citations omitted).

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In order to establish a *Brady* violation, a petitioner must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material to either guilt or punishment. *Graves v. Cockrell*, 351 F.3d 143, 153-54 (5th Cir. 2003).

In his pleadings, Petitioner argues the State deleted text messages which tended to show the complainant was neither in fear for her life nor scared Petitioner would kill her. Petitioner's argument is essentially that, if all the complete text messages had been presented to the jury, then the jury would have (1) concluded there was no reasonable suspicion for Petitioner's detention, and (2) determined that Officer Stickles's grabbing of Petitioner's shirt as Petitioner walked away was an assault on Petitioner and "create[ed] the altercation." (ECF No. 13-25 at 104.) Petitioner's argument is legally unsound, however, because "a person who is stopped or detained illegally is not immunized from prosecution for crimes committed during his detention period." *Bryant v. State*, 253 S.W.3d. 810, 812 (Tex. Ct. App.—Amarillo 2008) (citing *United States v. Garcia-Jordan*, 860 F.2d 159, 160 (5th Cir. 1988)). As a result, even if the State did withhold text messages from the jury and there was no reasonable suspicion for Petitioner's detention, this is immaterial to Petitioner's subsequent assault of Officer Stickles.

In any event, Petitioner has failed to rebut the state habeas court's findings with clear and convincing evidence that any text messages were, in fact, withheld. *See* 28 U.S.C. § 2254(e)(1) (a state court's factual findings are "presumed to be correct" unless the habeas petitioner rebuts the presumption through "clear and convincing evidence"). Mr. White attested that the State gave him and Petitioner an opportunity to view all the messages, and the complainant testified under oath that the text messages she gave the State were a "true and accurate" representation of the text messages between herself and Petitioner. Petitioner provides no evidence to rebut the state court's finding that the State did not withhold the text messages from Petitioner. Accordingly, this claim is denied.

9

B. The *Miranda* claim (claim 2)

In Petitioner's second claim for relief, he argues his Fifth Amendment rights were violated when the arresting officers failed or refused to admonish him pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Petitioner raised this claim during his state habeas corpus proceedings. In rejecting this claim, the state habeas court cited *Ex parte Gardner*, 959 S.W.2d 189, 191 (Tex. Crim. App. 1998) and found the claim waived because Petitioner had the opportunity to raise it on direct appeal but failed to do so. (ECF No. 13-25 at 186). The TCCA later adopted the state habeas court's findings and denied Petitioner's application. Based on this procedural history, Respondent contends Petitioner's claim before this Court should be denied as procedurally defaulted.

Procedural default occurs where a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that state procedural rule provides an independent and adequate ground for the dismissal. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017); *Canales v. Stephens*, 765 F.3d 551, 562 (5th Cir. 2014) (citing *Maples v. Thomas*, 565 U.S. 266, 280 (2012)). The "independent" and "adequate" requirements are satisfied where the state court clearly indicates its dismissal of a particular claim rests upon a state ground that bars relief, and that bar is strictly and regularly followed by the state courts. *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir. 2012) (citation omitted). This doctrine ensures that federal courts give proper respect to state procedural rules. *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).

In this case, the state habeas court recommending denying Petitioner's claim based on *Ex parte Gardner*, which bars consideration of claims that could have been but

10

were not raised on direct appeal. 959 S.W.2d 189, 191 (Tex. Crim. App. 1998). The Fifth Circuit has consistently held that the *Gardner* rule constitutes "an adequate state ground capable of barring federal habeas review." *Aguilar v. Dretke*, 428 F.3d 526, 535 (5th Cir. 2005) (citing *Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004)). As a result, Petitioner's claim is precluded from federal habeas review unless he can show cause for the default and resulting prejudice or can demonstrate that the Court's failure to consider his claim will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750-51; *Busby*, 359 F.3d at 718.

In his reply, Petitioner argues he did raise this claim on direct appeal and directs the Court to a page in his appellate brief where it states "Acker never read Appellant his *Miranda* warnings." (ECF No. 13-12 at 13.) This is insufficient to support Petitioner's argument the claim was raised on appeal: the sentence constitutes the only mention of *Miranda* in Petitioner's brief and the claim was never addressed in the state appellate opinion. Further, Petitioner does not argue cause and prejudice nor does he demonstrate that the Court's failure to consider the claim will result in a fundamental miscarriage of justice. As a result, the Court denies Petitioner's second claim as procedurally defaulted.

C. Ineffective Assistance of Trial Counsel (claims 3, 5)

In his third and fifth claims for relief, Petitioner argues his trial counsel, Michael White, provided ineffective assistance when White failed to interview and subpoena a key witness, failed to interview any witnesses, and failed to investigate the text messages between Petitioner and the complainant. The Sixth Amendment to the United States Constitution guarantees citizens the assistance of counsel in defending against criminal

prosecutions. U.S. CONST. amend VI. Sixth Amendment claims based on ineffective assistance of counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced the petitioner's defense. *Id.* at 687-88, 690. The Supreme Court has emphasized that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Burt*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Ineffective assistance of counsel claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). When the state

court has adjudicated the claims on the merits, a federal court must review a petitioner's

claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d).

*See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen*, 563 U.S. at 190). In

such cases, the "pivotal question" is not "whether defense counsel's performance fell

below *Strickland*'s standard," but whether "the state court's application of the *Strickland*

standard was unreasonable." *Richter*, 562 U.S at 101.

    Mr. White responded to Petitioner's claims in his affidavit as follows:

"In discussing the facts of the case with Mr. Thomas, he did not advise me
that there were eyewitnesses to the incident that may have recorded it.
Through discovery I learned that a woman by the name of Michelle Marshall
was present at the crime scene, and saw Mr. Thomas being restrained and
arrested. The Killeen officers reported that she told them that she did not
see what caused them to arrest Mr. Thomas. Although I assumed that he
had reviewed them with his previous attorney, on more than one occasion
I reviewed the videos made by the police, the witness statements, and the
police reports with Mr. Thomas. I do not recall interviewing any State's
witnesses prior to trial.

"Officer Stickles, the victim of the alleged assault, had an in-car video, as
did two other Killeen officers. The other officers videos started recording
after the struggle began, and included in one of them was Mr. Thomas
sitting in the back seat of a patrol car, confessing to assaulting Officer
Stickles, and apologizing to him. These three videos were played for the
jury. I did not learn of any cell phone video before the trial, and none was
shown to the jury. In addition, when Mr. Thomas took the witness stand in
his own defense, he did not testify to the existence of a cell phone video.

"During the discovery process, the State did make available to me
photographs of text messages between Mr. Thomas and the victim,
Christina Rogers. I reviewed this information and shared it with my client.
I do not recall any of the text messages that I reviewed being exculpatory
as to Mr. Thomas.

"In an effort to mount a defense to the charge, I researched the offense of
Resisting Arrest, thinking that it may be a lesser included offense of Assault
on a Public Servant. However, it was not, and I shared the legal authority

supporting my findings with Mr. Thomas. I discussed other possible defenses with Mr. Thomas, and asked him if he had any defense witness who might be helpful, but he responded that he did not.

(ECF No. 13-25 at 174-75.) Upon review, the state habeas court found Mr. White's

affidavit credible and made the following findings:

50. The Court finds that here, Mr. White: investigated the facts of the Applicant's case; discussed them with him; discussed with him the charge he faced; informed him of the punishment range; discussed and shared with him any discovery he received from the State concerning his case; and asked the Applicant for the identities of any witnesses who could be helpful to his case.

51. The Applicant complains that Mr. White did not utilize defense witnesses, but the Court finds that the Applicant failed to inform Mr. White of the existence of any defense witnesses when asked to do so.

52. Likewise, the Applicant insists that a video tape of the entire incident was available, but the Court finds that Mr. White reviewed all the available video recordings in the State's possession and none was of the entire incident.

53. Similarly, the Court finds that the Applicant's assertion that some of the text messages between the reporting party and him were exculpatory, could not be substantiated by Mr. White after he had reviewed all the text messages between the two that were in the State's possession.

54. The Court finds that at the trial, Mr. White cross-examined all but one of the State's witnesses, and thoroughly cross-examined [the complainant], the reporting party, and Officer Stickles, the victim.

55. Further, the Court finds that Mr. White requested and received a jury instruction in the Court's Charge on the offense of Resisting Arrest, which is not a lesser-included offense of the charged offense, Assault on a Public Servant.

56. Given the totality of Mr. White's representation of the Applicant in this case, the Court finds that the Applicant has failed to show that Mr. White's representation fell below an objective standard of reasonableness sufficient to undermine confidence in the outcome of his trial.

14

(*Id.* at 190-91) (record citations omitted).

*Strickland* requires counsel to undertake a reasonable investigation. 466 U.S. at 690-91; *Charles v. Stephens*, 736 F.3d 380, 389 (5th Cir. 2013). Counsel must, at minimum, interview potential witnesses and make an independent investigation of the facts and circumstances of the case. *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013). In assessing the reasonableness of counsel's investigation, a heavy measure of deference is applied to counsel's judgments and is weighed in light of the defendant's own statements and actions. *Strickland*, 466 U.S. at 691. To prevail on an ineffective-assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate the witness was available to testify, delineate the content of the witness's proposed testimony, and show the testimony would have been favorable to the defense. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

In his state and federal petitions, Petitioner alleges Michelle Marshall was an eyewitness to the incident and took a cellphone video of it. He attached a notarized statement from Ms. Marshall, dated August 23, 2018, to his state habeas application, wherein Ms. Marshall states she witnessed the incident and took a video, but that her phone was confiscated by the police before being returned to her. As for the incident, she states she saw Petitioner walk away from the police when the police grabbed and ripped Petitioner's shirt. Petitioner then pulled away, trying to yank his shirt loose from the officer. The police officer then fell forward onto his knees and the other officer ran over and grabbed Petitioner from the opposite side, with Petitioner yelling "What did I do? What did I do?" Petitioner stood there until the police officers grabbed his legs and

15

brought him to the ground. (ECF No. 13-25 at 157). Ms. Marshall also states she told Mr. White multiple times she was willing to testify on Petitioner's behalf at trial. (ECF No. 13-25 at 156.)

Ms. Marshall's letter runs contrary to Mr. White's attestation that Petitioner never alerted him to an eyewitness, and that it was only through discovery that Mr. White learned of Michelle Marshall, who—according to police reports—was present at the crime scene but told police officers she did not see what caused them to arrest Petitioner. Her letter also runs contrary to the trial testimony of the two police officers at the scene, and the video tape of Petitioner talking to a third police officer and saying "Yeah I put my hands around the officer, not to attack, but just grab because he was doing what he was doing." Petitioner then asked the police officer to tell the officer he assaulted he was sorry. (ECF No. 13-9 at 124.)

The state habeas court credited Mr. White's affidavit over Ms. Marshall's notarized statement, and Petitioner provides no clear and convincing evidence this exculpatory cell phone video still exists. Again, there is no evidence outside of Petitioner's allegations and Ms. Marshall's statement that Mr. White was aware Ms. Marshall had witnessed and recorded the incident, and her statement is contradicted by the testimony of three police officers as well as Petitioner's own statements in the police car. Further, as to Petitioner's allegation that Mr. White failed to interview witnesses, Petitioner does not state who Mr. White should have interviewed.

Regarding Petitioner's claim Mr. White failed to investigate the text messages, Mr. White attested he reviewed all the text messages that were in police custody, and the

complainant testified she gave all the messages between herself and Petitioner to the police. Even assuming Mr. White did not review the text messages and missed ones that provided a different context to the incident, Petitioner cannot prove prejudice: as noted in the prior section, even if the police illegally detained Petitioner, this would not result in Petitioner becoming immune from assaulting a public servant. *See Pondexter v. Quarterman*, 537 F.3d 511, 520 (5th Cir. 2008) (ineffective-assistance claim may be rejected for want of either deficient performance or prejudice; absence of either prong of the *Strickland* analysis is dispositive) (citing *Strickland*, 466 U.S. at 697). Accordingly, the state habeas court's application of *Strickland* to these claims was not unreasonable and they are denied.

D. The State did not provide a fair hearing on the motion to suppress (claim 4)

In his fourth claim for relief, Petitioner argues the State did not provide him with a fair hearing on his motion to suppress. Specifically, Petitioner argues that because Officer Stickles did not admonish Petitioner of his *Miranda* rights after Petitioner was arrested, the trial court's denial of Petitioner's motion to suppress was unreasonable. Respondent argues that this claim is, in part, procedurally barred, non-cognizable, and meritless.

Petitioner advanced this claim in his direct appeal. The state appellate court affirmed his conviction, holding that Officer Stickles "testified with respect to specific, articulable facts that reasonably would have led him to conclude that Appellant had engaged or soon would be engaged in criminal activity." *Thomas*, 2019 WL 1526434 at *4. The court noted Petitioner's argument that his text messages to the complainant

"'were not threatening and did not mention harming or killing anyone'" but concluded Petitioner's message that "the kids would be better off without [the complainant]" "supported a reasonable suspicion of criminal activity when considered in the context of other facts known by and relayed to Officer Stickles by Complainant." *Id.*

As Respondent argues, to the extent Petitioner is claiming the trial court erred in denying his motion to suppress because the police officers failed to admonish him of his *Miranda* rights, the Court has already concluded this argument is procedurally barred from federal habeas review. To the extent Petitioner is arguing the trial court's denial of his motion to suppress was unreasonable, Petitioner provides no clear and convincing evidence to overcome the factual determinations made by the state appellate court. *See* 28 U.S.C. § 2254(e)(1). Accordingly, this claim is denied.

E. Ineffective Assistance of Appellate Counsel (claim 6)

In Petitioner's sixth claim for relief, he argues his appellate counsel, Ms. Kristen Jernigan, provided ineffective assistance when counsel failed to argue on appeal that Mr. White had provided ineffective assistance when he failed to interview Michelle Marshall and examine her cellphone video.

Ms. Jernigan's affidavit addressed Petitioner's claim as follows:

3. When I met with Mr. Thomas at the jail, we discussed his trial and his concern that his trial counsel did not call any witnesses. I asked him to give me the names of any of those witnesses, but he did not identify any. Later in our conversation, he mentioned that his former fiancee was at the scene but that she may not have been a good witness because the allegation was that he cheated on her with the alleged victim in this case. And to clarify, Mr. Thomas testified in his own defense during the defense's case, so at least one witness was called. . . .

4. In my review of the record in this case, I considered the effectiveness of Mr. Thomas's trial counsel. Trial Counsel filed a Motion to Suppress and argued it well. He properly preserved error with respect to the issues in the motion and vigorously cross-examined the officers during the hearing on the motion. In addition, he effectively cross-examined the alleged victim at trial and raised several issues with her credibility and the veracity of her allegation that Mr. Thomas had threatened her. It appeared to me that Trial Counsel was prepared, and, although the State requested a sentence of not less than forty-five years and up to ninety-nine years or life in prison to send a message because of Mr. Thomas's lengthy criminal history, Mr. Thomas was sentenced to the lower end of that range, namely: fifty-three years. On this record, I did not find Trial Counsel to be ineffective.

(ECF No. 13-25 at 167-68). In recommending denying this claim, the state habeas court

found the following:

73. Here, the Court finds that Ms. Jernigan: mastered the trial record; researched the law; contacted and sought the input of the Applicant in identifying arguments to advance; evaluated the performance of trial counsel in anticipation of a claim of ineffective assistance; exercised judgment in selecting arguments; timely prepared, completed, and submitted a brief, and forwarded a copy of said brief to the Applicant; timely advised the Applicant that his conviction had been affirmed; sent him a copy of the appellate opinion and the rules on filing a Petition for Discretionary Review ("PDR"); and, to assist the Applicant, prepared and filed a Motion for Extension of Time to file a PDR.

74. The Court finds, that on this record there is no basis for finding that Ms. Jernigan provided ineffective assistance of counsel on appeal.

(*Id.* at 193-94.)

A criminal defendant is constitutionally entitled to effective assistance of appellate

counsel when he has a right to appeal under state law. *Evitts v. Lucey*, 469 U.S. 387, 397

(1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). The *Strickland*

standard for proving ineffective assistance of counsel applies equally to both trial and

appellate attorneys. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*,

720 F.3d 309, 319 (5th Cir. 2013). To obtain relief, Petitioner must demonstrate that (1) Ms. Jernigan's conduct was objectively unreasonable under then-current legal standards, and (2) there is a reasonable probability that, but for Ms. Jernigan's deficient performance, the outcome of Petitioner's appeal would have been different. *See Smith*, 528 U.S. at 285; *Higgins v. Cain*, 720 F.3d 255, 260-61 (5th Cir. 2013). To demonstrate deficiency, Petitioner must show that "counsel unreasonably failed to discover nonfrivolous issues and to rile a merits brief raising them." *Smith*, 528 U.S. at 285. Counsel is not, however, required to "raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal." *Id.* at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).

Petitioner argues Ms. Jernigan provided ineffective assistance by failing to argue on appeal that Mr. White provided ineffective assistance of counsel. The state habeas court concluded that Mr. White did not provide ineffective assistance, specifically with regard to his alleged failure to investigate Ms. Marshall's testimony and call witnesses. Because Mr. White's alleged ineffective assistance is not a nonfrivolous issue, Ms. Jernigan cannot be found ineffective for failing to raise it. Accordingly, the state habeas court's application of *Strickland* to this claim is not unreasonable and it is denied.

D. Actual Innocence (claim 7)

In Petitioner's final claim for relief, he argues that but for the alleged constitutional errors present in his case, i.e. the illegal detention and the failure to admonish him of his *Miranda* rights, no reasonable juror would have found Petitioner guilty of assault of a public servant. Respondent argues Petitioner's claim is meritless.

To the extent Petitioner is bringing a substantive or "freestanding" claim of actual innocence, it is not cognizable in a petition for federal habeas corpus relief pursuant to § 2254. *See Coleman v. Thaler*, 716 F.3d 895, 908 (5th Cir. 2013.) To the extent Petitioner is bringing a procedural actual innocence claim, the claim still fails. A procedural innocence claim is "'not itself a constitutional claim, but instead a gateway through which a habeas petition must pass to have his otherwise barred constitutional claim considered on the merits.'" *Schlup v. Delo*, 513 U.S. 298 (1995) (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). Petitioner's claims of constitutional violations are not barred, and more importantly, have no merit. This claim is denied.

### IV. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching

the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the Court will not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**; and

It is **FURTHER ORDERED** that no certificate of appealability shall issue in this case.

SIGNED this 28th day of October, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE